UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY JACOBS,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>  Defendant. | Case No. CV 13-2853-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On April 23, 2013, plaintiff Danny Jacobs filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") properly rejected the opinion of treating physician, Dr. Navid Hakimian. Memorandum in Support of Complaint ("P. Mem.") at 4-16; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-7.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinion of plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence for doing so. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on his alleged disability onset date, and was forty-six years old on his date last insured, has a high school education. AR at 48, 177. His past relevant work was as a salesperson and lumber handler. *Id.* at 61.

On June 29, 2010, plaintiff filed an application for a period of disability and DIB due to morbid obesity, sleep apnea, narcolepsy, hypertension, swollen legs/feet, shortness of breath/dizziness/headaches, an inability to walk long periods of time, memory loss, twitches/shaky hands at times, and an inability to lift heavy items. *Id.* at 177, 181. The Commissioner denied plaintiff's application initially, after which he filed a request for a hearing. *Id.* at 97-101, 106.

On August 29, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 44-65. The ALJ also heard testimony from Ronald Hatakeyama, a vocational expert. *Id.* at 58-63. On October 17, 2011,

plaintiff testified at a supplemental hearing. *Id.* at 66-92. Dr. David Brown, a medical expert, and Lynne Tracy, a vocational expert, also provided testimony. *Id.* at 70-84, 87-91. On October 21, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 23-31.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from June 15, 2009, the alleged onset date, through December 31, 2010, the date last insured. *Id.* at 25.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: severe obstructive sleep apnea; history of deep vein thrombosis; and morbid obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 26.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to perform light work with the limitations that plaintiff: could stand/walk two hours in an eight-hour workday; could sit six hours in an eight-hour workday; and must avoid hazards, excessive dust, fumes, and extremes of temperature. *Id*. at 27.

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as a salesperson or lumber handler. *Id.* at 29.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1    At step five, the ALJ found that there were jobs that existed in significant
2 numbers in the national economy that plaintiff could perform, including cashier II
3 and bench assembler. *Id.* at 29-30. Consequently, the ALJ concluded that
4 plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*
5 at 31.
6    Plaintiff filed a timely request for review of the ALJ's decision, which was
7 denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final
8 decision of the Commissioner.

## III.
## STANDARD OF REVIEW

11   This court is empowered to review decisions by the Commissioner to deny
12 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
13 Administration must be upheld if they are free of legal error and supported by
14 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
15 (as amended). But if the court determines that the ALJ's findings are based on
16 legal error or are not supported by substantial evidence in the record, the court
17 may reject the findings and set aside the decision to deny benefits. *Aukland v.*
18 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
19 1144, 1147 (9th Cir. 2001).
20   "Substantial evidence is more than a mere scintilla, but less than a
21 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such
22 "relevant evidence which a reasonable person might accept as adequate to support
23 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
24 F.3d at 459. To determine whether substantial evidence supports the ALJ's
25 finding, the reviewing court must review the administrative record as a whole,
26 "weighing both the evidence that supports and the evidence that detracts from the
27 ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Navid Hakimian. P. Mem. at 4-16. Specifically, plaintiff contends that the ALJ's sole reason for rejecting Dr. Hakimian's opinion – that it was not supported by the record – was not specific and legitimate and supported by substantial evidence. *Id.* The court agrees that the ALJ erred.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 494.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

**Dr. Hakimian**

Dr. Hakimian, a pulmonologist, treated plaintiff from April 2010 through at least September 27, 2011. AR at 583. Dr. Hakimian began treating plaintiff when he was admitted to Marino Del Rey Hospital (the "Hospital") complaining of shortness of breath. *Id.* at 583. Plaintiff remained hospitalized for over a month. *See id.* at 235-40. During the hospitalization, plaintiff was diagnosed with, inter alia, hypoxemia, acute respiratory failure, septic shock, and acute deep venous thrombosis. *Id.* Upon admission, the Hospital took a chest x-ray and found chronic obstructive pulmonary disease ("COPD"). *Id.* at 235. Plaintiff eventually required a tracheostomy. *Id.* at 296, 492-93. Dr. Hakimian continued to treat plaintiff after discharge. *See, e.g., id.* at 535, 537, 539.

Dr. Hakimian submitted two opinions. On November 23, 2010, Dr. Hakimian completed a Physical Capacities Evaluation. *Id.* at 204. In the evaluation, Dr. Hakimian opined that plaintiff: could sit eight hours in an eight-hour workday; could not stand/walk for even an hour in a workday; could lift five

pounds frequently and ten pounds occasionally; could carry five pounds occasionally; could occasionally bend and crawl; was unable to squat or climb; and was restricted from driving automotive equipment and exposure to dust, fumes, and gases. *Id.* Dr. Hakimian cited hypoxemia as one of the reasons for his opinion. *Id.* On September 27, 2011, Dr. Hakimian drafted a letter opinion in which he stated that plaintiff continued to suffer from multiple impairments, including pulmonary embolus with pulmonary hypertension, COPD, sleep apnea, and obesity. *Id.* at 583. Dr. Hakimian opined that plaintiff required oxygen chronically and had limited activity. *Id.*

**Dr. David Brown**

Dr. Brown, a rheumatologist, provided expert testimony at the supplemental administrative hearing. *Id.* at 70-84, 201. Dr. Brown based his opinion on a review of plaintiff's medical records. Dr. Brown noted that the impairments concerned plaintiff's pulmonary conditions and testified that the record contains evidence of a severe obstructive sleep apnea, deep venous thrombosis, and obesity. *Id*. at 71-72.

With regard to plaintiff's alleged pulmonary embolus, Dr. Brown testified that the hospital records did not support Dr. Hakimian's pulmonary embolus diagnosis. *Id.* at 71. There was no record of a lung scan, angiogram, or CT. *Id.* Dr. Brown further testified that there was no evidence of persistent pulmonary hypertension, which was expected with a pulmonary embolism. *Id.* at 73. But Dr. Brown acknowledged that plaintiff was treated with a filter, which may be used to treat pulmonary embolism, and that pulmonary hypertension can occur transiently. *Id.* at 71, 73.

As for plaintiff's need for continuous oxygen, Dr. Brown testified that plaintiff did not need daily supplemental oxygen during the alleged period of disability. *Id*. at 83. Dr. Brown noted that plaintiff's medical records reflected

oxygen saturation values between 80% to 94% on room air. AR at 72, 80. Specifically, Dr. Brown noted that plaintiff had a 94% oxygen saturation value during a July 2011 examination and a 91% oxygen saturation rate in September 2010, both on room air. *Id.* at 72, 80. Dr. Brown did not provide testimony concerning plaintiff's COPD.

Dr. Brown opined that plaintiff had the RFC to lift twenty pounds occasionally and ten pounds frequently, stand/walk two hours in an eight-hour workday with scheduled breaks, and sit six hours with scheduled breaks. *Id*. at 75. Dr. Brown further opined that plaintiff be restricted from working: at dangerous heights; in activities that would require extensive balance; in excessive dust, fumes, or extreme cold and heat; and around aerosolized chemicals. *Id.*

**The ALJ's Findings**

The ALJ concluded that plaintiff had the severe impairments of severe obstructive sleep apnea, history of deep vein thrombosis, and morbid obesity, and had the RFC to perform light work except he was restricted to, inter alia, standing/walking two hours and sitting six hours. *Id.* at 25, 27. In reaching that determination, the ALJ gave moderate weight to Dr. Hakimian's opinion and great weight to Dr. Brown's opinion.[2] *Id.* at 28. The ALJ gave Dr. Hakimian's opinion only moderate weight because his opinion did not specify when plaintiff became oxygen dependent, he did not cite to objective medical evidence to support his COPD diagnosis, and the record did not support most of his opined limitations. *Id.* at 28-29. The ALJ's reasons for discounting Dr. Hakimian's opinion were not specific and legitimate and supported by substantial evidence. *See Lester*, 81 F.3d at 830.

---

[2] The ALJ also gave moderate weight to the RFC assessment of Dr. P. Harar, a State Agency physician. *Id.* at 29.

The first reason the ALJ provided as a basis for rejecting portions of Dr. Hakimian's opinion was lack of specificity. The ALJ correctly noted that Dr. Hakimian's letter did not specify the precise date when plaintiff became oxygen dependent; however, Dr. Hakimian clearly indicated in the letter that plaintiff had been oxygen dependent since his April 2010 hospitalization. *Id*. at 583. Moreover, even if Dr. Hakimian's statement in the letter that plaintiff "required oxygen at all times" since his hospitalization could somehow be found ambiguous, the record also reflects that plaintiff had been continuously administered oxygen since his hospitalization, thereby further suggesting that he had been oxygen dependent since then. *See, e.g., id*. at 400, 449, 454-56. And on November 11, 2010, Dr. Hakimian signed a Certificate of Medical Necessity, noting that plaintiff required an oxygen concentrator. *Id.* at 577. Thus, the ALJ's reason for discounting Dr. Hakimian's opinion that plaintiff was oxygen dependent was not a legitimate reasons supported by substantial evidence.

The second reason cited by the ALJ – that Dr. Hakimian did not cite to objective medical evidence to support plaintiff's COPD diagnosis in his September 2011 letter – was similarly not specific and legitimate or supported by substantial evidence. Had the letter been the only document submitted by Dr. Hakimian, the ALJ's reason would be legitimate. But here, Dr. Hakimian provided his treatment notes and plaintiff's hospital records, which were the bases for his opinion. Plaintiff's discharge summary from the Hospital, dated June 14, 2010, reflected that a chest x-ray showed that plaintiff had COPD. *Id.* at 235.

Even assuming that the ALJ's actual reason for discounting Dr. Hakimian's opinion was not that Dr. Hakimian failed to cite to supporting objective evidence in his letter but rather there was no objective evidence in the record to support the diagnosis, it would be insufficient to merely state that. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by

9

sufficient objective findings . . . does not achieve the level of specificity our prior cases have required."). The ALJ must identify the conflicting evidence and set out his reasoning. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). And as stated above, there was some objective medical evidence to support Dr. Hakimian's opinion.[3]

The ALJ also rejected Dr. Hakimian's COPD diagnosis on the basis that he included other diagnoses "which were fully treated during [P's] hospitalization in 2010 or for which he has received no apparent treatment." AR at 28. This was not a specific and legitimate reason. Regarding the fully treated diagnoses, Dr. Hakimian was merely providing a history of plaintiff's impairments and did not imply that those specific impairments were ongoing. *See id*. at 583. As for the diagnosis that the ALJ characterized as apparently untreated – bipolar affective disorder – there is in fact evidence of treatment in the record. *See id.* at 565-67.

The ALJ's third reason for discounting Dr. Hakimian's opinion – that most of his opined limitations were not supported by the record – was also not supported by substantial evidence. There was no dispute that plaintiff was morbidly obese, had respiratory issues, and used a cane to walk. The record is replete with references to plaintiff's obesity. *See, e.g., id.* at 75, 414, 418, 533. And while there is dispute concerning the extent of plaintiff's oxygen dependency, the record clearly reflects that plaintiff was hospitalized for over a month in 2010 and was administered oxygen continuously throughout 2010. *See, e.g., id.* at 235-40, 454, 467, 472. Any of these factors could support Dr. Hakimian's limitations.

---

[3] The court notes that there was also objective evidence to support the ALJ's rejection of Dr. Hakimian's COPD diagnosis but the ALJ did not identify it. Dr. Hakimian performed a spirometry on September 20, 2010. AR at 482-87. The interpretation of the results were that there was "no obstructive lung defect indicated by the FEV1/FVC ratio," but there was a moderate restrictive lung defect. *Id.* at 482.

10

In addition to the three express reasons, the ALJ appeared to partially reject Dr. Hakimian's opinion due to Dr. Brown's testimony. But the ALJ's reliance on Dr. Brown was misplaced. As an initial matter, Dr. Brown was a rheumatologist, while Dr. Hakimian was a pulmonologist. As Dr. Brown acknowledged, plaintiff's medical impairments concerned his pulmonary functions. AR at 71. Given Dr. Hakimian's area of speciality, the ALJ should have given Dr. Hakimian's opinion more weight unless there were specific and legitimate reasons to accord it less weight. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting that the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist); 20 C.F.R. § 404.1527(c)(5).

Here, Dr. Brown's opinion was undermined by his numerous factual errors. First, Dr. Brown testified that he found no hospital records identifying a pulmonary embolism such as a lung scan, angiogram, or CT. *Id.* at 71. But the Hospital performed a CT, which showed that plaintiff had pleural effusions. *Id.* at 238. Dr. Brown also acknowledged that plaintiff was treated with a filter, which may be used in pulmonary embolism. *Id.* at 71.

Second, Dr. Brown testified that plaintiff was only hospitalized for two weeks and then treated on an outpatient basis. *Id*. at 72. The Hospital records, however, reflect that plaintiff was admitted on April 29, 2010 and then discharged on June 14, 2010, at which point he was transferred to Brotman Medical Center, an acute rehabilitation center, where he stayed for two weeks. *Id*. at 213, 235-40, 283-85.

Finally, Dr. Brown testified that he based his opinion that plaintiff did not require continuous oxygen on his treatment records, which showed that his oxygen saturation ranged from 80% to 94% on room air from 2010 through 2011. *Id.* at 72, 80. Specifically, Dr. Brown noted that plaintiff had a 91% oxygen saturation value on room air in September 2010 and a 94% oxygen saturation value on room

air during a July 2011 examination. *Id.* at 72, 80. But Dr. Brown misread the record. During the majority of plaintiff's examinations during which his oxygen saturation value was measured, including in September 2010, plaintiff was administered oxygen. *See id.* at 532-39, 543. Indeed, plaintiff was on room air only on one occasion. *See id.* at 542. As for the July 2011 examination, which was outside of the alleged period of disability, Dr. Hakimian did not specifically note whether plaintiff was on room air or oxygen when the oxygen saturation test was administered. *See id.* at 572. Assuming he was on room air, one instance of plaintiff having an oxygen saturation rate above 90% on room air is not substantial evidence that plaintiff did not require continuous oxygen.

In sum, Dr. Brown's testimony was not supported by the record and could not constitute substantial evidence. In addition, as set forth above, the ALJ failed to cite specific and legitimate reasons supported by substantial evidence for rejecting portions of Dr. Hakimian's opinion. Accordingly, the ALJ erred in discounting Dr. Hakimian's opinion.

## V.
## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were

properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate Dr. Hakimian's opinion  On remand, the ALJ shall reconsider the opinion provided by Dr. Hakimian and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 19, 2014

SHERI PYM
United States Magistrate Judge